1   WILLIAM McGRANE [057761]
    WILLIAM WALRAVEN [262586]
2   McGRANE LLP
    4 Embarcadero Center, Suite 1400
3   San Francisco, California 94111
    Telephone: (415) 766-3590

4

    Attorneys for Intervenor Donna Cangelosi
5   in her capacity as TDI Representative

6

7

            UNITED STATES BANKRUPTCY COURT
8
            CENTRAL DISTRICT OF CALIFORNIA
9
            SANTA BARBARA DIVISION
10

11  MIDLAND PACIFIC BUILDING
    CORPORATION,
12
                 Plaintiff,
13
    v.
14
    JOHN E. KING, CAROLE D. KING, DOES
15  1-25, inclusive,

16               Defendants.

17  ────────────────────────

18  DONNA CANGELOSI, in her capacity as
    TDI Representative,
19
               Intervenor.
20  ────────────────────────

| | |
|---|---|
| AP Case No.  12-01147 | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR DONNA CANGELOSI'S MOTION TO TRANSFER PROCEEDING TO THE DISTRICT COURT OF NEVADA**

21

22

23

24

25

26

## I.    INTRODUCTION

Donna Cangelosi was appointed "TDI Representative" under an order issued by the United States District Court for the District of Nevada in a bankruptcy case pending there— *In re Asset Resolution, LLC*, Case No. BK–S–09-32824 RCJ.[1]  Pursuant to that order, she was authorized to preserve and protect certain property in San Luis Obispo for the benefit of the investors in that property, the largest of which was Asset Resolution, LLC.   A copy of the Order is Exhibit A to the accompanying *Request for Judicial Notice in Support of Intervenor Donna Cangelosi's Motion to Transfer This Action to the District Court of Nevada* (RJN), and is quoted at length below.  The appointment and the purposes it serves were deemed by the Nevada District Court to be part of its "core" function.  RJN, Exhibit A at p. 1.

In her capacity as TDI Representative, Ms. Cangelosi has removed the *Midland Pacific Building Company v. John E. King and Carole D. King* action from the California Superior Court for the County of San Luis Obispo (the State Case) to this bankruptcy court under 28 U.S.C. §1452.[2]  The issues raised in the State Case arise in and are related to the bankruptcy action.  28 U.S.C. §1334.[3]

---

[1]  This matter was before Judge Jones when he was a bankruptcy judge.  When he was appointed to the District Court he continued to handle this case.

[2]  "(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

[3]  (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

* * *

2

Memorandum of Points and Authorities in Support of Intervenor Donna Cangelosi's Motion to Transfer This Action to the District Court of Nevada

1    Although Section 1452 requires that cases be removed to the district in which the

2    action is pending, the adjudication of this matter belongs in the United States District Court,

3    District of Nevada. This Court recognized the typicality of this procedure *In re Bisno* 433

4    B.R. 753, 757 (Bkrtcy.C.D.Cal. 2010), where the removing party tried to remove a state

5    case directly to the district where the bankruptcy was pending:

6    Removal of a state court case to a bankruptcy court located in a federal district
other than the district in which the state court is located is normally a two-step
7    process. First, the removing party removes the state court case to the local
bankruptcy court whose district encompasses the state court where the case is
8    pending. Second, the removing party (or any other party in interest) files a motion in
that bankruptcy court to transfer the removed case to the district where the relevant
9    bankruptcy case is pending.

10

11   **II.    THE COURT HAS THE AUTHORITY TO TRANSFER THIS CASE TO
         NEVADA**
12

13   Section 1412[4] gives the Court the authority to transfer this case to Nevada:

14   A district court may transfer a case or proceeding under title 11 to a district
court for another district, in the interest of justice or for the convenience of the
15   parties.

16   So, too, does Section 1404[5]  Rule 1014(a) of the Federal Rules of Bankruptcy Procedure

17   likewise provide:

18   (e) The district court in which a case under title 11 is commenced or is pending
19   shall have exclusive jurisdiction--

20   (1) of all the property, wherever located, of the debtor as of the commencement of
such case, and of property of the estate; and

21   (2) over all claims or causes of action that involve construction of section 327 of
22   title 11, United States Code, or rules relating to disclosure requirements under section 327.

         [4]   Unless otherwise indicated, all references are to Title 28 of the United States
23   Code.

24        [5]   There has been some debate about whether Section 1412 applies only to "related
to" cases. This Court has ruled that Section 1412 applies to all transfers.  See *Mendoza v.*
25   *GM*, 2010 US Dist Lexis 134694, agreeing with *Creekridge Capital, LLC v. Louisiana*
*Hosp Center, LLC*, 410 B.R. 623, 628-29 (D. Minn. 2009).

26

(1) Cases filed in proper district. If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

## III.    THE COURT SHOULD TRANSFER THIS CASE

### A.    THE DISTRICT WHERE THE BANKRUPTCY IS PENDING IS THE PRESUMPTIVE CHOICE OF VENUE.

The courts can consider a number of factors in deciding whether to transfer a case.  In *In re Cytodyn of New Mexico, Inc.* 374 B.R. 733, 742 (Bkrtcy.C.D.Cal. 2007) the Court listed 11 factors, and that was not considered an exhaustive list.  In *Donald v. Curry* (*In re Donald*), 328 B.R. 192 (B.A.P. 9th Cir. 2005) the Ninth Circuit Bankruptcy Appellate Panel summarized the principles behind the decision as "a balancing of due process concerns or assuring appropriate access to the court ... against the economic and efficient administration of the case."

The "most important factor,"[6] however, is to transfer cases to the district where the bankruptcy case is pending.  In *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) the Second Circuit, with support from the Collier treatise on bankruptcy, explained that the venue where the bankruptcy is pending is *presumed* to be the appropriate district:

> [T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.  *In re Lionel Corp.*, 24 Bankr. 141, 143 (Bankr. S.D.N.Y. 1982); 1 Collier, supra, at para. 3.02[4][a], at 3-153.

The Bankruptcy Court for the Eastern District of California stated:

> One court has noted, "so far as appears, nearly every case that has considered

---

[6] *Barnes v. Moffatt*, 2006 U.S. Dist. LEXIS 78206, 3-4 (S.D. W. Va. Oct. 25, 2006)

1
2

transfer of a bankruptcy proceeding has construed this phrase ["the interest of justice"] in section 1412 to give primacy to administrative matters affecting the estate."

3
4
5
6
7
8

See also, e.g., *A. J. Industries, Inc. v. U.S. Dist. Court for Central Dist. of California* 503 F.2d 384, 389 (9th Cir. 1974) ("The feasibility of consolidation is a significant factor in a transfer decision, *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *Clark v. Chrysler Group, LLC,* 2010 U.S. Dist. LEXIS 118741, 25-26 (E.D. Pa. Nov. 5, 2010) ("When the case in which transfer is sought is one 'related to' a bankruptcy proceeding, the district where the bankruptcy is pending is generally the appropriate venue."); *Adair v. Hunt Intern. Resources Corp.* 526 F.Supp. 736, 742 (D.ILL. 1981) ("as a general proposition, cases should be transferred to the district where related actions are pending.").

9
10
11

### B.    ADMINISTRATION OF THE ESTATE ASSETS INVOLVED IN THIS CASE IS ESSENTIAL TO MAXIMIZING THE VALUE OF THE ESTATE.

12
13
14

As noted below, the Federal District Court for the District of Nevada considers marshaling and administering the property involved in the State Case to be a core function of the court because it affects the administration of the Bankruptcy Estate.

15

### 1.    The State Case

16
17
18
19
20
21
22
23
24
25

On or about February 14, 2003, Defendants John and Carole King (collectively, the Kings) entered into a Purchase Agreement with Plaintiff Midland Pacific Building Corporation (Midland Pacific) for the development of property in San Luis Obispo known as the Margarita Annex Property (the Property).  In connection with the agreement the Kings executed a Promissory Note and Deed of Trust for $1 million.  Midland Pacific alleges that under the Purchase Agreement John King was supposed to seek or obtain the approval of the City of San Luis Obispo for a Draft Tract Map of approximately 120 lots. Midland Pacific would then have the option of purchasing "Market Rate Lots" for approximately $125,000.00 each.  Midland Pacific claims that Mr. King breached the contract by presenting a High Density Tract Map to the City that did not resemble the Draft

26

1   Tract Map in the contract.  Midland Pacific alleges that this is because a third party was

2   paying Mr. King to develop the Property for affordable housing.[7]

3          The Kings defend that the City changed the requirements for development in the

4   area, making it impossible to get approval for the Draft Tract Plan.[8]  Mr. King has cross-

5   complained against Midland Pacific that the plaintiff made getting any approval impossible

6   by its conduct during City Council meetings.  Among the relief he seeks is rescission of the

7   Purchase Agreement contract.[9]

8          In the course of the transaction, the Kings paid off the million dollar Promissory

9   Note.[10]

10         One of the hotly contested issues in the case has been the validity of Midland

11  Pacific's *lis pendens.*  Mr. King's motion to expunge the *lis pendens* was initially denied by

12  the Superior Court.  The Court of Appeal issued a writ requiring expungement.[11]  Midland

13  Pacific filed a Second Amended Complaint and moved for leave to re-record the *lis*

14  *pendens* and sought leave to file a new *lis pendens.*  In its *Reply to Opposition to Motion for*

15  *Leave to Re-Record Lis Pendens Following Expungement,*[12] Midland Pacific opened with

16  this statement: "King cannot seriously contend that this case does not involve a 'real

17  _____

18         [7] RJN, Exhibit B, *Third Amended Complaint for Breach of Contract –Specific*
    *Performance, etc,* filed June 4, 2009; Exhibit C, *Ruling on Special Motion to Strike First*
19  *Amended Complaint,* filed May 30, 2006, pp.3-4.

20         [8] RJN, Exhibit D, *Declaration of John King in Reply to Plaintiff's Opposition to*
    *Defendant's Motion to Expunge Lis Pendens, etc.*, filed October 5, 2006, at ¶¶ 7, 10.

21         [9] RJN, Exhibit E, *Defendant and Cross-Complainants John E. King and Carole D.*
    *King's First Amended Cross-Compliant etc.*, filed July 13, 2009, ¶¶ 27-31.
22
           [10] RJN, Exhibit F, *Declaration of Dennis Moresco In Opposition to Motion to*
23  *Expunge Lis Pendens*, filed October 3, 2006, ¶¶ 4-5.

24         [11] RJN Exhibit G, untitled and unpublished opinion by the California Court of
    Appeal, Second Appellate District, Division Six received on November 30, 2007.
25         [12] RJN, Exhibit H *Reply to Opposition to Motion for Leave to Re-Record Lis*
    *Pendens Following Expungement*, filed July 13, 2008, p. 1 (emphasis in original).
26

1    property claim.' This case is *nothing other* than a claim for ultimate title to the property at

2    issue." The request was denied.[13]

3         The parties then entered into a stipulation permitting Midland Pacific to amend its

4    complaint for a third time, permitting Mr. King to amend his cross-complaint and

5    permitting Midland Pacific to resume the *lis pendens.* [14] The Third Amended Complaint

6    includes a cause of action for specific performance, in which Midland Pacific asks that the

7    Court enter "an order … requiring King to … sell the Margarita Property to Midland for a

8    purchase price of Ten Million Dollars." The Third Amended Complaint adds a new cause

9    of action, the ninth, to "Establish and Foreclose Purchaser's Lien Pursuant to Civil Code §

10    3050."[15]  In the prayer for this cause of action, Midland Pacific asks the Court "For an

11    order for the sale of the premises in accordance with law and that the proceeds from the

12    sale be used to satisfy the indebtedness of $581,000 with interest."[16]

13         On about July 26, 2004, the Kings borrowed $10,600,000.00[17] from a group of over

14    100 aggregated investors (the Margarita Direct Lenders ).  The Kings signed a Promissory

15    Note which was secured by a Deed of Trust on the Margarita Annex Property—the very

16    property that is the subject of the dispute in this action. [18]

17         The Kings have *not* paid this debt; they owe approximately $42 million on the

18

19         [13] RJN, Exhibit I, *Order Denying Plaintiff's Motion for Leave to Re-Record Lis
Pendens*, filed August 28, 2008.

20         [14] RJN, Exhibit J *Stipulation to:  1. Permit Plaintiff to File an Amended Complaint;
21    2. Permit Defendants to file Amended Cross Complaint; 3. To Continue Lis Pendens; and
4. To Take Motion Off Calendar*, filed May 8, 2009.

22         [15] RJN, Exhibit B, *Third Amended Complaint for Breach of Contract etc.*, filed June
23    4, 2009 at ¶¶ 57-62.

         [16] *Id.* at p. 14.
24
         [17] This amount was ultimately increased to $12 million.

25         [18] RJN, Exhibit K, *Deed of Trust* for the Margarita Annex Property recorded with the
26    San Luis Obispo County Clerk/Recorder on July 30, 2004.

Memorandum of Points and Authorities in Support of Intervenor Donna Cangelosi's Motion to Transfer This Action
to the District Court of Nevada

1  Note.[19]

2  ## 2.    The Appointment Of Cangelosi As TDI Representative

3  By far the largest Margarita Direct Lender was USA Capital Trust Fund, an affiliate

4  of USA Commercial Mortgage Company (USACM).  On April 13, 2006, USA Commercial

5  Mortgage Company and its affiliates filed Chapter 11 bankruptcy petitions in the United

6  States Bankruptcy Court for the District of Nevada.  USACM's assets were sold, and

7  through a series of transactions —described in RJN Exhibit B at pp. 3-4—USACM's

8  interest in the Margarita Annex Property became the property of Asset Resolution, LLC.

9  Asset Resolution, LLC itself filed a bankruptcy petition in October 2009.

10  In an effort to marshal the assets Asset Resolution, LLC, the United States District

11  Court for the District of Nevada entered an order on May 3, 2012, appointing Donna

12  Cangelosi—referred to in the Order as a "TDI Representative" — to act on behalf of the

13  Margarita Direct Lenders to preserve the value of the Margarita Annex Property.[20]  The

14  District Court of Nevada Order states:

15  2. The matter is a care proceeding under 28 U.S.C. §§157(b)(A) (insofar as it
pertains to administration of the Asset Resolution Estate), (B)(insofar as it pertains
16  to allowance or disallowance of claims), (C)(insofar as it pertains to counterclaims
by the estate against persons filing claims against the estate), (D)(insofar as it
17  pertains to orders in respect to obtaining credit), (M)(insofar as it pertains to orders
approving the use of property), and/or (O)(insofar as it is a proceeding affecting the
18  liquidation of the assets of the estate or the adjustment of the debtor-creditor or the
equity security holder relationship).
19

20  * * *

21  18. The Margarita Loan was originated in 2004 by USA Commercial
Mortgage Company and its affiliates ("USACM") and funded by 98 "direct lender"
22  investors. The principal amount of the Margarita Loan is $12,000,000 and bore a

23

24  [19] See RJN, Exhibit A, *Order Re Approval of Post-Petition Financing, Loan Related
Claim Resolution and Related Matters (Margarita Annex)*, at ¶ 21.
25  [20] *Id.*

26

non-default interest rate of thirteen percent per annum. The original term was for twelve months, and the maturity date of the loan was extended several times.

19. The borrowers under the Margarita Loan are John and Carol King (the "Borrowers").

20. The Margarita Loan is governed by a deed of trust and other loan documents (the "Margarita Loan Documents") establishing, among other things, a first lien on 99.5 acres in San Luis Obispo, California which were mapped for 150 lots ranging in size from 5,000 to 6,000 square feet (the "Collateral Property").

21. The Margarita Loan is in default. The total unpaid legal balance due from the borrowers under the Margarita Loan Documents is over $42 million as of February 29, 2012.

22. The Asset Resolution [e]state owns direct lender beneficial interests in the Margarita Loan equal to 24.42% of the principal balance of the Margarita Loan ($2,930,400 original principal investment).

23. Direct lenders ("B&B DLs") who are identified in the Proof of Claim filed by Bickel & Brewer (the "B&B Proof of Claim") with respect to the Margarita Loan in the Bankruptcy Cases own direct lender beneficial interests in the Margarita Loan equal to 47.13% of the principal balance of the Loan ($5,655,500 original principal investment).

* * *

32. The Margarita Annex Loan is presently in default and the Collateral Property is still owned by the borrower.

33. Plan renewal fees to protect valuable legal entitlements for the Collateral Property are due to be paid in April; if such fees are not paid, the entitlements will be lost.[21]

34. A tax foreclosure is scheduled for May 2012 and fees must be paid in order to keep the tentative map current.[22]

35. Cross has held the position of loan servicer for the Margarita Annex Loan since June 24, 2010.

36. Cross has not advanced funds necessary to pay the plan renewal fees (and thereby preserve the entitlements for the Collateral Property) and/or to pay the taxes (and thereby protect the Collateral Property from foreclosure).

37. The purpose of the Protective Advance Loan is to assist the Estate and other Margarita DLs to maximize recovery of their investments by providing funds

---

[21]  After the order was entered, Ms. Cangelosi learned that the renewal was extended.  The fees are due in 2013.

[22]  The taxes were paid by the Margarita Direct Lenders. The foreclosure was delayed pending the outcome of this action.

1   to, among other things, take title to the Collateral Property, pay delinquent and on-
2   going taxes relating to the Collateral Property, and pay for costs associated with
    preserving development rights for the Collateral Property and enhancing its value for
3   future sale.

4                                              * * *

5       40. Because beneficial direct lender interests in the Margarita Annex Loan
    belong to more than one natural person, the Transaction requires the action of the
6   holders of the beneficial direct lender interests in the loan under Nev. Rev. Stat.
    645B.340 et al.

7       41. The holders of at least 51% of the beneficial or direct lender interests in
    the Margarita Annex Loan (the "DL Majority") have: (a) approved the Transaction
8   in writing; (b) have voted to  terminate Cross as the servicer for the Margarita Annex
    Loan; and ( c) have appointed direct lenders Robin Graham ("Graham") and Donna
9   Cangelosi ("Cangelosi") to request the Transaction and administer the Protective
10  Advance Loan on behalf of all of the Margarita DLs except the Estate.

11                                             * * *

        The Court hereby affirms and this Order shall be incontrovertible evidence of
12  the standing and/or authority of the TDI Representative(s) to undertake the actions
    contemplated by the Transaction or the Budget or the Permitted Purposes on behalf
13  of all of the direct lenders holding interests in the Margarita Annex loan (including
    without limitation foreclosure of the collateral for that loan), and all persons and
14  entities are hereby barred from contesting the standing or authority of the TDI
15  Representatives to so act despite the absence of any separate power of attorney or
    other document from one or more of the direct lenders.

16

17      The District Court for the District of Nevada considered the administration of the

18  Margarita Annex property so important to the administration of the bankruptcy estate that it

19  created a unique office—the TDI Representative—and empowered the representative to

20  marshal the property.

21      The Margarita Direct Lenders and the Bankruptcy Trustee have much more at stake in

22  the outcome of the state case than even the plaintiff in that case.  Midland Pacific's note

23  was paid.  The Margarita Direct Lenders have $42 million at stake.  They have a vested

24  interest in who will end up owning the Margarita Annex, and how it may be developed.

25  These decisions will be key to the value of the property, and the value of the Estate.  As a

26

1  secured party, the Trustee of the Asset Resolution, LLC Bankruptcy Estate is entitled to be

2  involved in those decisions in order to maximize the value of the Estate.  This can only be

3  done in the District Court of Nevada.

4        **C.**     **THE OTHER FACTORS BEARING ON THE TRANSFER ISSUE ARE
5  RELATIVELY INSIGNIFICANT.**

6       Judge Jones, the Federal Judge in charge of this case, sits in Reno, Nevada.

7  Admittedly, Reno is not as close to the property as Santa Barbara.  But the inconvenience is

8  not insurmountable.  The case is not being transferred across the country.  The parties are

9  not about to lose their rights to access to the court as a result.  Indeed, Reno is closer to the

10  parties than many parts of California.   According to Google Maps it is 425 miles from San

11  Luis Obispo to Reno; by comparison, it is 94 miles to Santa Barbara.

12  **IV.**     **CONCLUSION: THE CASE SHOULD BE TRANSFERRED**

13       Section 1412 is written in the disjunctive—the Court may transfer if it is in the interest

14  of justice *or* for the convenience of the parties.  The interest of justice prong has been

15  demonstrated above.  "Under the interest of justice prong . . . the economical and efficient

16  administration of the estate, is the most important factor to consider."  *Barnes v. Moffatt,*

17  2006 U.S. Dist. LEXIS 78206, 3-4 (S.D. W. Va. Oct. 25, 2006).

18       On the one hand, the Bankruptcy Court considered administration of the Margarita

19  Annex property important enough to appoint a special representative so as to marshal a

20  multi-million dollar asset for the Bankruptcy Estate.  On the other hand, it will take the

21  parties a few hours longer to get to the courthouse.

22       On balance, the inconvenience of going to Reno is substantially outweighed by the

23  necessity of having a single court administer all of the assets of the Bankruptcy Estate.

24       We respectfully submit that this matter should be transferred to the Federal District

25  Court for the District of Nevada.

26

11

Memorandum of Points and Authorities in Support of Intervenor Donna Cangelosi's Motion to Transfer This Action
to the District Court of Nevada

1   Dated:  June 14, 2012                        McGRANE LLP

2

3                                                By: /s/ William McGrane
                                                    William McGrane
                                                 Attorneys for Intervenor Donna Cangelosi
4                                                in her capacity as TDI Representative

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26