1 | Thomas Winfield, State Bar No. 041637
John A. Moe, II, State Bar No. 066893
2 | MCKENNA LONG & ALDRIDGE LLP
300 South Grand Avenue, Suite 1400
3 | Los Angeles, California 90071
Telephone No.: 213.688.1000
4 | Fax No.: 213.452.8039
E-Mail:  jmoe@mckennalong.com
5 |
Attorneys for Midland Pacific Building Corporation
6 |

7 |

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SANTA BARBARA DIVISION

| | |
|---|---|
| 11  MIDLAND PACIFIC BUILDING CORPORATION, | Adv No. 9:12-ap-01147-RR |
| 12      Plaintiff, | Hon. Robin L. Riblet |
| 13  v. | **REQUEST FOR HEARING AND RESPONSE OF MIDLAND PACIFIC BUILDING CORPORATION TO INTERVENOR DONNA CANGELOSI'S NOTICE OF MOTION AND MOTION TO TRANSFER PROCEEDING TO THE DISTRICT COURT OF NEVADA; DECLARATIONS OF DENNIS MORESCO, REED HARRIS AND THOMAS GREEN** |
| 14  JOHN E. KING, CAROLE D. KING, | |
| 15      Defendants. | |
| 16 | |
| 17  DONNA CANGELOSI, in her capacity as TDI Representative, | |
| 18 | |
| 19      Intervenor. | [MOVING PARTY TO SCHEDULE AND GIVE NOT LESS THAN 14 DAYS NOTICE OF HEARING; LBR 9013(o)(4)] |
| 20 | |
| 21 | Status Conference: Date: September 11, 2012 |
| 22 | Time: 11:00 A.M. Place: Courtroom 201 |
| 23 |      1415 State Street      Santa Barbara, CA  93101 |

24

25

26

27

28

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT  IN OPPOSITION TO MOTION TO
     TRANSFER PROCEEDING TO NEVADA DISTRICT COURT ......................1

II.  BACKGROUND FACTS ...........................................................................2

III. PROCEDURAL HISTORY OF STATE LITIGATION ..................................5

IV.  ARGUMENT .................................................................................................9
     A.   The Legal Standard.................................................................9
     B.   The Factors Do Not Favor Transferring The Case To Nevada........11
     C.   The Debtor Does Not Own The San Luis Obispo Property ............12
     D.   California Courts Should Decide California Law ..........................12
     E.   The Interests Of Justice And Judicial Economy Does Not
          Favor Transfer ........................................................................12

V.   CONCLUSION .................................................................................13

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*Commodity Futures Trading Comm. v. Savage,*
611 F.2d 270 (9th Cir. 1979)........................................................................10

5

6

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986)..........................................................................9

7

*DIRECTV, Inc. v. EQ Stuff, Inc.,*
207 F. Supp. 2d 1077 (C.D. Cal. 2002).......................................................10

8

9

*Everpure, LLC v. Selecto, Inc., No. CV 09-2844 AHM (FFMx),*
2010 WL 480970 (C.D. Cal. Feb. 3, 2010) .................................................10

10

11

*Florens Container v. Cho Yang Shipping,*
245 F. Supp. 2d 1086 (N.D. Cal. 2002).........................................................9

12

*Gulf States Exploration Co. v. Manville Forest Prods. Corp.*
*(In re Manville Forest Prods. Corp.*),
896 F.2d 1384 (2d Cir. 1990) ..............................................................10, 12

13

14

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,*
179 F.R.D. 264 (C.D. Cal.1998)...................................................................11

15

16

*In re Bell Tower Assocs., Ltd.,*
86 B.R. 795 (Bankr. S.D.N.Y. 1988) ..........................................................10

17

18

*In re Pinehaven Assocs.,*
132 B.R. 982 (Bankr. E.D.N.Y. 1991) ........................................................12

19

20

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000)........................................................................11

21

*Midland Pacific Building Corp. v. King*
157 Cal.App.4th 264 (2007) ...................................................................6, 20

22

23

*Midland Pacific Building Corporation v. John E. King & Carole D. King,*
Case No. CV 060107 ......................................................................................1

24

25

*STX, Inc. v. Trik Stik, Inc.,*
708 F. Supp. 1551 (N.D. Cal. 1988) ............................................................10

26

*Van Dusen v. Barrack,*
376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ...................................10

27

28

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

28 U.S.C. 1412 ......................................................................................... 9

28 U.S.C. section 1404(a) ................................................................. 9, 10

28 U.S.C. section 1412 ......................................................................... 11

Civil Code section 3050 .......................................................... 8, 9, 22, 23

**OTHER AUTHORITIES**

Bankruptcy Rule 9013-1(o)(1)(A)(ii) ..................................................... 1

Bankruptcy Rule 9027-1(c) .................................................................... 1

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*,
   sections 3841-55 ........................................................................... 11

201232013.1

Case No. 9:12-ap-01147-RR
REQUEST AND RESPONSE TO INTERVENOR'S
MOTION TO TRANSFER PROCEEDING

1    Midland Pacific Building Corporation ("Midland Pacific"), the Plaintiff in an

2    action filed in the Superior Court in San Luis Obispo, which action is identified as

3    *Midland Pacific Building Corporation v. John E. King & Carole D. King*, Case

4    No. CV 060107, removed to this Bankruptcy Court by a Notice Of Removal filed

5    June 13th, files this Request For Hearing And Response ("Request") to Intervenor,

6    Donna Cangelosi's Notice Of Motion And Motion To Transfer Proceeding To The

7    District Court Of Nevada ("Motion To Transfer")[1].

8    <center>I.</center>

9    <center>**PRELIMINARY STATEMENT**</center>

10    <center>**IN OPPOSITION TO MOTION TO**</center>

11    <center>**TRANSFER PROCEEDING TO NEVADA DISTRICT COURT**</center>

12    "Intervenor,"[2] Donna Cangelosi ("Cangelosi"), is asking this Bankruptcy Court

13    to transfer to the District Court in Nevada a case that has been pending in the

14    Superior Court for 6 years, *before*:

15    •    Midland Pacific can respond to the Notice Of Removal, which response

16        is not due until July 13, 2012 ("30 days after the date of filing of the

17        Notice Of Removal"), as prescribed in Local Bankruptcy Rule 9027-1(c);

18        and.

19    •    Cangelosi's Motion To Intervene in the State Court Action is considered

20        and resolved, set for hearing on August 29, 2012[3].

21    / / /

22    / / /

23    / / /

---

24    [1] This Request is filed within 14 days of the date of service of the Motion To
25    Transfer (filed June 14th), as required by Local Bankruptcy Rule 9013-1(o)(1)(A)(ii).

26    [2] Ms. Cangelosi filed in the Superior Court a Motion To Intervene.

27    [3] With "removal" of the State Court Proceeding to the Bankruptcy Court, the State
    Court no longer has jurisdiction to make a decision on Cangelosi's Motion To
28    Intervene, that was scheduled by Cangelosi for a hearing on August 29, 2012.

<center>1</center>

1       Midland Pacific intends on filing on or before July 13, 2012, a Motion For

2  Remand, and is considering the filing on or before August 7, 2012, of an Opposition

3  to the Motion To Intervene.[4]

4       As explained in paragraph 24 of the accompanying Declaration of Thomas

5  Green ("Green Decl."), Midland Pacific seeks a to obtain a Judgment against King in

6  Superior Court, that will permit Midland Pacific to foreclose on Midland Pacific's

7  Purchaser's Lien and recover from King approximately Five Hundred Eighty-One

8  Thousand Dollars ($581,000) that Midland Pacific paid to King as deposit money

9  towards the purchase of the Property, in addition to interest thereon.  However,

10  once Midland Pacific obtains a Judgment against King, Midland Pacific agrees to

11  forebear its right to foreclose on the Property without first going back to the

12  Bankruptcy Court to either:   (1) have the Debtor agree to Midland Pacific's

13  foreclosure and sale of the Property; or (2) to be treated appropriately in

14  Bankruptcy as a secured Judgment Creditor with priority.

15  <div align="center">**II.**</div>

16  <div align="center">**BACKGROUND FACTS**</div>

17       The subject matter of the Superior Court Case arises from a Purchase

18  Agreement between John E. King ("King") and Midland Pacific [Declaration of

19  Dennis Moresco ("Moresco Decl."), ¶ 3].   Both parties to the agreement are

20  experienced real estate developers [Moresco Decl., ¶ 3].   *The Purchase Agreement*

21  *was drafted and signed in California* [Moresco Decl., ¶ 3].   *Mr. King is a resident of*

22  *California* [Moresco Decl., ¶ 3].   *Midland Pacific is a California corporation* [Moresco

23  Decl., ¶ 3].

24  / / /

25  / / /

26
27
28

---

[4] If Midland Pacific files an Opposition, Midland Pacific will file its Opposition to the Motion To Intervene, in both the Bankruptcy Court and the State Court, unless the Bankruptcy Court requires Cangelosi to resolve the Motion To Intervene in the State Superior Court.

<div align="center">2</div>

201232013.1

1    The subject of the Purchase Agreement is a single parcel of land totaling

2   approximately 98 acres in the Margarita Expansion area *within the City of San Luis*

3   *Obispo* (the "City") [Moresco Decl., ¶ 4].

4    Exhibit "A" to the Purchase Agreement, the "Draft Specific Plan" and the

5   "Draft Tract Map," both contain an accurate description of the 98 acres of property

6   that is the subject of the purchase and sale transaction (the "Property") [Moresco

7   Decl., ¶ 5].

8    It was understood by Midland Pacific and King at the time they signed the

9   Purchase Agreement -- although it is not specifically stated in the contract -- that

10  27 of these 98 acres were intended for the development of residential lots, with the

11  remaining 71 acres to be dedicated to the City as open space after the sale [Moresco

12  Decl., ¶ 6].

13    Although the Purchase Agreement contemplated the sale of the entire 98-acre

14  parcel, the purchase price was based solely upon the number of Market Rate Lots

15  approved for development on the 27-acre portion of the Property [Moresco Decl.,

16  ¶ 6].  The purchase price terms and conditions of the Purchase Agreement relate

17  exclusively to the 27-acre portion of the Property because the development of

18  residential lots drove the transaction economically [Moresco Decl., ¶ 6].

19    The original draft of the Purchase Agreement was prepared by King and

20  presented to Midland Pacific in or about February 2003 [Moresco Decl., ¶ 7].

21  Midland Pacific and King then revised the draft in a collaborative manner to

22  adequately reflect the parties' intent [Moresco Decl., ¶ 7].

23    At the time the Purchase Agreement was signed, King was processing an

24  application with the City to dedicate the 71-acre piece of property to the City and

25  subdivide the remaining 27-acre portion of the property [Moresco Decl., ¶ 8].  The

26  Purchase Agreement called for King to continue to process the map and to obtain

27  approval of a subdivision that was in "*substantial conformance*" with the "Draft

28  Tract Map," which is attached to the Purchase Agreement [Moresco Decl., ¶ 8].

1    Because the final purchase price for the total Property would be based upon the

2    number of "Market Rate Lots" ultimately approved by the City, eliciting from the

3    City its tentative position on the development was essential [Moresco Decl., ¶ 8].

4        The "Draft Tract Map" showed approximately 120 lots. [Moresco Decl., ¶ 9]

5    However, the agreement contained a recitation that both parties recognized that the

6    actual number of lots might be more or less than 120 [Moresco Decl., ¶ 9].  Market

7    Rate Lots were defined as single family residential lots that were both in substantial

8    conformance with the lots shown on the "Draft Tract Map" and free from any

9    affordability restrictions. Approved lots that were not Market Rate Lots, would not

10   be considered in calculating the purchase price; in other words, the parties agreed

11   that non-Market Rate Lots added no value to the transaction [Moresco Decl., ¶ 9].

12       As required by the agreement, King continued to process an application for a

13   map consistent with the "Draft Tract Map" [Moresco Decl., ¶ 10].

14       In or about 2005, an agent for King, David Watson, approached Reed Harris,

15   Vice-President of Development at Midland Pacific, and advised him that the City

16   was demanding a reconfiguration of the tentative map to accommodate additional

17   affordable housing units [Declaration of Reed Harris ("Harris Decl."), ¶ 6]. The

18   housing density in the reconfigured map would increase the number of detached

19   single family residential lots to approximately 140 lots [Harris Decl., ¶ 6].  Based

20   upon these representations, Midland Pacific agreed that it would consider the

21   reconfiguration of the tentative map to be in "substantial conformance" with the

22   "Draft Tract Map" [Harris Decl., ¶ 6].  In January 2006, the application had been

23   set for hearing before the City Planning Commission [Harris Decl., ¶ 7].  City Staff

24   was recommending approval of a tentative map with 140 single family residential

25   lots [Harris Decl., ¶ 7].

26       On January 8, 2006, John King spoke with Reed Harris [Harris Decl., ¶ 8].

27   Mr. King told Mr. Harris that processing the map had been more expensive than

28   anticipated and that, based on market conditions, the lots were worth much more

4

1   than the contract price [Harris Decl., ¶ 8].  Mr. King told Mr. Harris that Midland

2   Pacific would have to agree to increase the purchase price of the lots by a total of

3   $40,000 per lot [Harris Decl., ¶ 8].  Mr. King threatened that should Midland Pacific

4   not agree to the price increase, King would present a map to the City which would

5   both reduce lot size and increase the number of lots from 140 to approximately

6   190-200 [Harris Decl., ¶ 8].  Mr. Harris told Mr. King that he would have to speak

7   to Midland Pacific's president, Dennis Moresco [Harris Decl., ¶ 8].

8        In response to King's request, Midland Pacific responded that *Midland Pacific*

9   *would not increase the purchase price* and that *Midland Pacific expected King to*

10   *perform as provided in the Purchase Agreement.*  King refused [Harris Decl., ¶ 9].

11        At the January 25, 2006 Planning Commission meeting, King unveiled a new

12   tentative map ("High Density Map") which, true to John King's threat, provided a far

13   greater density than the 140-Lot map King was obligated to process [Harris Decl.,

14   ¶ 10].  The Planning Commission approved King's new tentative map [Harris Decl.,

15   ¶ 10].

16        On July 3, 2007, the City approved the High Density Map for the Property.

17   Based on King's unilateral reconfiguration, the 27-acre element of the approved

18   tentative map contains approximately 180 lots [Harris Decl., ¶ 11].  Only 80 of

19   these lots fall within the definition of "Market Rate Lot" under the Purchase

20   Agreement [Harris Decl., ¶ 11].

**III.**

**PROCEDURAL HISTORY OF STATE LITIGATION**

23        Midland Pacific filed a Complaint against King in the Superior Court in San

24   Luis Obispo in February 2006 (just after King revealed the High Density Map)

25   [Green Decl., ¶ 4].

26        On March 23, 2006, Midland Pacific filed a First Amended Complaint to

27   include additional causes of action [Green Decl., ¶ 5].

28   / / /

1    On April 27, 2006, King filed a Motion To Strike the First Amended Complaint

2  pursuant to the anti-SLAPP statute (King claimed that Midland Pacific's actions to

3  prevent him from processing any subdivision map he wanted was in violation of his

4  constitutional rights) [Green Decl., ¶ 6].

5    On May 30, 2006, Superior Court Judge Roger Picquet issued a ruling

6  denying the Motion To Strike and King appealed [Green Decl., ¶ 7].

7    In affirming the trial court's decision, the Court Of Appeals held in a

8  published opinion that Midland Pacific had established a *prima facia* case for

9  breach of contract [Green Decl., ¶ 8].    *Midland Pacific Building Corp. v. King*

10  157 Cal.App.4th 264, 274 (2007) .  But the Court Of Appeals also directed the

11  Superior Court to expunge Midland Pacific's previously recorded *lis pendens* on the

12  basis that the operative Complaint did not state a real property claim [Green Decl.,

13  ¶ 8].

14    After the First Amended Complaint was filed, King obtained approval from the

15  City of San Luis Obispo for a the High Density Map as was required under the

16  terms of the parties' Purchase Agreement [Green Decl., ¶ 9].  The City's approval

17  triggered Midland Pacific's obligation under the Purchase Agreement to purchase

18  the Margarita Property.  Accordingly, on April 14, 2008, Midland Pacific filed its

19  Second Amended Complaint to include causes of action for specific performance

20  and declaratory relief [Green Decl., ¶ 9].  Midland Pacific also filed a Motion For

21  Leave To Re-Record *Lis Pendens* [Green Decl., ¶ 9].

22    On May 5, 2008, King demurred to the Second Amended Complaint on the

23  basis that the Purchase Agreement was allegedly in violation of the Subdivision

24  Map Act and that the fraud allegations were not properly pleaded [Green Decl.,

25  ¶ 10].

26    On May 27, 2008, the court overruled King's Demurrer and ordered King to

27  file an Answer within 30 days [Green Decl., ¶ 11].  On June 25, 2008, King filed an

28  Answer and a Cross-Complaint against Midland Pacific [Green Decl., ¶ 11].

1    On August 28, 2008, the Superior Court denied Midland Pacific's Motion To

2    Re-Record The *Lis Pendens*, but by stipulated agreement of the parties, the *lis*

3    *pendens* remained of record [Green Decl., ¶ 12].

4    On August 29, 2008, Midland Pacific filed a Motion To Strike King's Cross-

5    Complaint pursuant to the anti-SLAPP statute on the basis that King's Cross-

6    Complaint alleged Midland Pacific breached the agreement by appearing at public

7    meetings and communicating with City employees [Green Decl., ¶ 13].  Midland

8    Pacific also filed a Renewed Motion For Leave To Re-Record *Lis Pendens*, or in the

9    alternative, Motion To Reconsider the August 28, 2008 ruling.  On September 11,

10    2008, Midland Pacific filed an Answer to King's Cross-Complaint [Green Decl.,

11    ¶ 13].

12    In September and then again in November 2008, the parties stipulated to

13    extend the hearing dates on Midland Pacific's Motion To Strike and Motion To Re-

14    Record *Lis Pendens* [Green Decl., ¶ 14].

15    On December 22, 2008, the case was reassigned, and at the request of

16    counsel, the Court continued the hearing dates on Midland Pacific's two Motions to

17    February 26, 2009 [Green Decl., ¶ 15].

18    In January 2010, at the request of the parties, the court again extended the

19    hearing on Midland Pacific's Motions to March 18, 2009, which was subsequently

20    moved again to May 13, 2009 [Green Decl., ¶ 16].

21    On May 6, 2010, the parties stipulated to informally resolve the issues

22    presented by Midland Pacific's pending Motions in order to allow the parties to

23    continue negotiating a possible settlement [Green Decl., ¶ 17].   In the May 6

24    Stipulation, the parties agreed [Green Decl., ¶ 17] that:

25    •    Midland Pacific would be permitted to file a Third Amended Complaint;

26    •    King would be permitted to file a pleading in response to the Third

27    Amended Complaint and an amended Cross Complaint;

28    / / /

7

Case No. 9:12-ap-01147-RR
REQUEST AND RESPONSE TO INTERVENOR'S
MOTION TO TRANSFER PROCEEDING

- The *Lis pendens* that was ordered expunged but remained of record would continue to remain in place until defendant moved for expungement or by further agreement of the parties; and

- That Midland Pacific's Motion To Strike and Motion To Re-Record would be taken off calendar.

On June 4, 2009, Midland Pacific filed a Third Amended Complaint adding causes of action for rescission and to establish and foreclose a purchaser's lien pursuant to Civil Code section 3050 [Green Decl., ¶ 18]. On July 10, 2009, King filed an Answer to the Third Amended Complaint and a First Amended Cross-Complaint. On August 13, 2009, Midland Pacific filed an Answer to the First Amended Cross Complaint [Green Decl., ¶ 18].

On January 14, 2010, the case was reassigned to Judge Dodie Harmon where it remains [Green Decl., ¶ 19].

On November 10, 2010, the parties attended private Mediation but were unable to resolve the matter, however the parties continued to work towards resolution [Green Decl., ¶ 20]. On March 29, 2011, the parties filed a Stipulation To Extend The Time To Bring The Action To Trial because the numerous times the case was stayed during various Motions and Appeals made calculating the deadline unclear to both parties [Green Decl., ¶ 20]. The parties agreed that any trial on or before February 6, 2013 would be timely [Green Decl., ¶ 20].

On August 12, 2011, Midland Pacific filed a Motion For Summary Adjudication To Foreclose its Purchaser's lien, which Midland Pacific subsequently withdrew to continue negotiations [Green Decl., ¶ 21]. On December 7, 2011, the parties stipulated to extend the trial date to some date prior to December 6, 2012 [Green Decl., ¶ 21].

In regard to the current status of the pleadings, the operative pleading for Midland Pacific is a Third Amended Complaint against King and Carole King asserting causes of action for Breach Of Contract – Specific Performance,

8

1   Declaratory Relief, Breach Of Contract – Damages, Breach Of The Implied Covenant

2   Of Good Faith & Fair Dealing, Fraud, Rescission and To Establish And Foreclose

3   Purchaser's Lien Pursuant To Civil Code Section 3050.  A copy of the operative

4   Complaint and Answer (without Exhibits) are attached as Exhibit "A" [Green Decl.,

5   ¶ 22].

6        In his First Amended Cross-Complaint, King asserts causes of action against

7   Midland Pacific for Declaratory Relief, Breach Of Contract – Damages, Breach Of

8   The Implied Covenant Of Good Faith & Fair Dealing, Reformation Of Contract and

9   Rescission Of Contract.  A copy of the operative Cross-Complaint and Answer (both

10  without Exhibits) are attached as Exhibit "B" [Green Decl., ¶ 23].

11       **The case is scheduled to go to trial on October 1, 2012** [Green Decl.,

12  ¶ 25]**.**

13       On June 13, 2012, -- after six years of litigation in the Superior Court --

14  Intervenor Donna Cangelosi filed a Notice Of Removal To Bankruptcy Court, then

15  filed the pending Motion To Transfer.

16                              **IV.**

17                            **ARGUMENT**

18  A.    <u>The Legal Standard</u>

19       This Court has discretion in deciding whether to grant a Motion To

20  Transfer filed under 28 U.S.C. § 1404(a) and 28 U.S.C. 1412.  *Decker Coal Co. v.*

21  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

22       In the Ninth Circuit, a plaintiff's choice of forum is given substantial

23  weight and a party moving to transfer a case must present strong grounds for

24  disturbing that choice.  *Id.* (District Court did not abuse its discretion in denying

25  defendant's request to transfer where defendant did not make the necessary "strong

26  showing of inconvenience to warrant upsetting the plaintiff's choice of forum");

27  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal.

28  2002) (denying defendant's request to transfer since, "under Ninth Circuit law, a

                                  9

1    plaintiff's choice of forum is accorded substantial weight in proceedings under this

2    section, and courts generally will not transfer an action unless the 'convenience'

3    and 'justice' factors strongly favor venue elsewhere"); *DIRECTV, Inc. v. EQ Stuff, Inc.,*

4    207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) (denying defendant's request to

5    transfer, as "[t]here is a strong presumption in favor of the plaintiff's choice of

6    forum").

7         Transfer is not appropriate merely to shift the inconvenience from one

8    party to another. *See Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824,

9    11 L.Ed.2d 945 (1964) (reversing and remanding grant of motion to transfer,

10   holding that "Section 1404(a) provides for transfer to a more convenient forum, not

11   to a forum likely to prove equally convenient or inconvenient"); *U.S. v. One Oil*

12   *Painting Entitled "Femme en Blanc" by Pablo Picasso*, 362 F. Supp. 1175, 1185-6

13   (C.D. Cal. 2005) (denying defendant's motion to transfer because "transfer should

14   not be granted if the effect is simply to shift the inconvenience to the party resisting

15   the transfer"); *Everpure, LLC v. Selecto, Inc., No. CV 09-2844 AHM (FFMx),* 2010 WL

16   480970, at *2-4 (C.D. Cal. Feb. 3, 2010) (denying defendant's motion to transfer).

17        The burden is on the moving party to establish that a transfer will

18   allow a case to proceed more conveniently and better serve the interests of justice,

19   in or out of bankruptcy court. *See, e.g., Commodity Futures Trading Comm. v.*

20   *Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (affirming denial of motion to transfer);

21   *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988) (denying

22   motion to transfer on the grounds that "defendant can demonstrate no strong

23   reason for transfer").

24        More specifically, the burden is on the movant to prove by a

25   preponderance of the evidence that the proceeding should be transferred. *Gulf*

26   *States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods.*

27   *Corp.*), 896 F.2d 1384, 1390 (2d Cir. 1990); *In re Bell Tower Assocs., Ltd.*, 86 B.R.

28   795, 798-99 (Bankr. S.D.N.Y. 1988).  The movant must demonstrate that the

1    proposed transfer is "in the interest of justice or for the convenience of the parties."

2    28 U.S.C. § 1412.

3            In deciding a motion to transfer venue, courts weigh multiple factors,

4    including:  (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3)

5    the convenience of the witnesses; (4) the location of books and records; (5) which

6    forum's law applies; (6) the interests of justice; and (7) administrative

7    considerations.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

8    *Procedure*, §§ 3841-55; *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-

9    99 (9th Cir. 2000) (suggesting the following factors may be relevant in assessing a

10    motion to transfer venue:  "(1) the location where the relevant agreements were

11    negotiated and executed, (2) the state that is most familiar with the governing law,

12    (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum,

13    (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

14    differences in the costs of litigation in the two forums, (7) the availability of

15    compulsory process to compel attendance of unwilling non-party witnesses, and (8)

16    the ease of access to sources of proof"); accord *Guthy-Renker Fitness, L.L.C. v. Icon*

17    *Health & Fitness, Inc.,* 179 F.R.D. 264, 269 (C.D. Cal. 1998).  None of these factors

18    weigh in favor of disturbing Midland Pacific's choice of forum.

19            B.      The Factors Do Not Favor Transferring The Case To Nevada

20            In this case, the Plaintiff chose the forum of the Superior Court in San

21    Luis Obispo.

22            The convenience of the parties favors allowing the action to remain in

23    the San Luis Obispo Superior Court:

24        •      The Plaintiff is a California corporation.

25        •      The Defendant (and Cross-Complainant) is a California resident.

26        •      Neither the Plaintiff, nor Defendant, are in bankruptcy.

27        •      The Real Property that is the subject matter of the litigation is within

28               the County of San Luis Obispo.

1  •  Virtually all of the witnesses in this action are California residents.

2  •  The Plaintiff's and Cross-Complainant's books and records are in

3 California.

4  •  The contracts were executed in California.

5  •  California law will apply to this action.

6 C.  <u>The Debtor Does Not Own The San Luis Obispo Property</u>

7  The Debtor does <u>NOT</u> own the Property.  The Debtor has only a security

8 interest in the Property as a result of a Deed Of Trust.

9  The Intervenor can protect the Debtor's interest in the Property in the

10 forum where the action has been pending for six years.

11 D.  <u>California Courts Should Decide California Law</u>

12  Because the legal basis for Midland Pacific's and King's claims involve

13 California law, California's interest in deciding this matter is greater than Nevada's.

14 E.  <u>The Interests Of Justice And Judicial Economy Does Not Favor</u>

15  <u>Transfer</u>

16  The "interest of justice" component of the test regarding a proposed

17 transfer of venue is "a broad and flexible standard which must be applied on a

18 case-by-case basis.  It contemplates a consideration of whether transferring venue

19 would promote the efficient administration of the bankruptcy estate, judicial

20 economy, timeliness, and fairness."  *In re Manville Forest Prods. Corp.*, 896 F.2d at

21 1391.  It also "encompasses . . . inquiry as to the forum which facilitaes the

22 efficient, proper and expeditious functioning of the courts."  *In re Pinehaven*

23 *Assocs.*, 132 B.R. 982, 990 (Bankr. E.D.N.Y. 1991).

24  The interests of justice and administrative considerations strongly

25 weigh in favor of letting the action proceed to trial in the Superior Court in San Luis

26 Obispo.  Trial is scheduled for October 1, 2012.

27 / / /

28 / / /

<div align="center">12</div>

Case No. 9:12-ap-01147-RR
REQUEST AND RESPONSE TO INTERVENOR'S
MOTION TO TRANSFER PROCEEDING

1

## V.

## **CONCLUSION**

In filing its Complaint, Midland Pacific exercised its right to litigate in the forum of its choice.  Given the substantial nexus of operative facts which took place in California, the forum's own interest in litigating the case, and the comparative convenience of all parties and witnesses, this is the correct choice.

Cangelosi has failed to meet her burden.  The Motion To Transfer should be denied.[5]

DATED:  June 28, 2012          MCKENNA LONG & ALDRIDGE LLP

By: /s/John A. Moe, II
    JOHN A. MOE, II
    Attorneys for Midland Pacific Pacific Building
    Corporation

---

[5] In deciding the Motion To Intervene, this Court also should consider Midland Pacific's Motion For Remand which will be filed on or before July 13, 2012.

13

## DECLARATION OF DENNIS MORESCO

I, Dennis Moresco, declare, that if called as a witness, I would and could competently testify thereto, my own personal knowledge as follows:

1.     I am President and Chief Executive Officer of the Plaintiff, Midland Pacific Building Corporation ("Midland Pacific") and have held that position at all times mentioned in this Declaration.

2.     I am personally familiar with the relationship between and the facts concerning Midland Pacific and John King ("King").

3.     The subject matter of the Superior Court Case arises from a Purchase Agreement between King and Midland Pacific.  Both parties to the agreement are experienced real estate developers.  The Purchase Agreement was drafted and signed in California.  Mr. King is a resident of California.  Midland Pacific is a California corporation.

4.     The subject of the Purchase Agreement is a single parcel of land totaling approximately 98 acres in the Margarita Expansion area *within the City of San Luis Obispo* (the "City").

5.     Exhibit "A" to the Purchase Agreement, the "Draft Specific Plan" and the "Draft Tract Map," both contain an accurate description of the 98 acres of property that is the subject of the purchase and sale transaction (the "Property").

6.     It was understood by Midland Pacific and King at the time they signed the Purchase Agreement -- although it is not specifically stated in the contract -- that 27 of these 98 acres were intended for the development of residential lots, with the remaining 71 acres to be dedicated to the City as open space after the sale. Although the Purchase Agreement contemplated the sale of the entire 98-acre parcel, the purchase price was based solely upon the number of Market Rate Lots approved for development on the 27-acre portion of the Property.  The purchase price terms and conditions of the Purchase Agreement relate exclusively

/ / /

1   to the 27-acre portion of the Property because the development of residential lots

2   drove the transaction economically.

3        7.      The original draft of the Purchase Agreement was prepared by King and

4   presented to Midland Pacific in or about February 2003.  Midland Pacific and King

5   then revised the draft in a collaborative manner to adequately reflect the parties'

6   intent.

7        8.      At the time the Purchase Agreement was signed, King was processing

8   an application with the City to dedicate the 71-acre piece of property to the City

9   and subdivide the remaining 27-acre portion of the property.   The Purchase

10  Agreement called for King to continue to process the map and to obtain approval of

11  a subdivision that was in "*substantial conformance*" with the "Draft Tract Map,"

12  which is attached to the Purchase Agreement.  Because the final purchase price for

13  the total Property would be based upon the number of "Market Rate Lots"

14  ultimately approved by the City, eliciting from the City its tentative position on the

15  development was essential.

16       9.      The "Draft Tract Map" showed approximately 120 lots.  However, the

17  agreement contained a recitation that both parties recognized that the actual

18  number of lots might be more or less than 120.  Market Rate Lots were defined as

19  single family residential lots that were both in substantial conformance with the

20  lots shown on the "Draft Tract Map" and free from any affordability restrictions.

21  Approved lots that were not Market Rate Lots, would not be considered in

22  calculating the purchase price; in other words, the parties agreed that non-Market

23  Rate Lots added no value to the transaction.

24       10.     As required by the agreement, King continued to process an application

25  for a map consistent with the "Draft Tract Map".

26  / / /

27  / / /

28  / / /

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed this 27th day of June, 2012 in Atascadero, California.

4

5                                    /s/Dennis Moresco
                                    DENNIS MORESCO
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF REED HARRIS

I, Reed Harris, declare, that if called as a witness, I would and could competently testify thereto, of my own personal knowledge as follows:

1.    I was the Vice President of Development for the Plaintiff, Midland Pacific Building Corporation ("Midland Pacific") and have held that position at all times mentioned in this Declaration.

2.    I am personally familiar with the relationship between and the facts concerning Midland Pacific and John King ("King").

3.    One of my responsibilities for Midland Pacific was to interact with King regarding the application for a tentative subdivision application for the 27-acre parcel that is the subject of the lawsuit filed by Midland Pacific against King, filed in the Superior Court in San Luis Obispo.  I am familiar with the Purchase Agreement dated February 14, 2003, between Midland Pacific and King.

4.    The subject of the Purchase Agreement is a single parcel of land totaling approximately 98 acres in the Margarita Expansion area within the City of San Luis Obispo (the "City").

5.    Exhibit "A" to the Purchase Agreement, the "Draft Specific Plan" and the "Draft Tract Map," both contain an accurate description of the 98 acres of property that is the subject of the purchase and sale transaction (the "Property").

6.    In or about 2005, an agent for King, David Watson, approached me and advised me that the City was demanding a reconfiguration of the tentative map to accommodate additional affordable housing units. The housing density in the reconfigured map would increase the number of detached single family residential lots to approximately 140 lots.  Based upon these representations, Midland Pacific agreed that it would consider the reconfiguration of the tentative map to be in "substantial conformance" with the "Draft Tract Map".

/ / /

/ / /

1    7.    In January 2006, the application had been set for hearing before the

2    City Planning Commission.  City Staff was recommending approval of a tentative

3    map with 140 single family residential lots.

4    8.    On January 8, 2006, John King spoke with me.  Mr. King told me that

5    processing the map had been more expensive than anticipated and that, based on

6    market conditions, the lots were worth much more than the contract price.

7    Mr. King told me that Midland Pacific would have to agree to increase the purchase

8    price of the lots by a total of $40,000 per lot.  Mr. King threatened that should

9    Midland Pacific not agree to the price increase, King would present a map to the

10   City which would both reduce lot size and increase the number of lots from 140 to

11   approximately 190-200.  I told Mr. King that he would have to speak to Midland

12   Pacific's president, Dennis Moresco.

13   9.    In response to King's request, Midland Pacific responded that Midland

14   Pacific would not increase the purchase price and that Midland Pacific expected

15   King to perform as provided in the Purchase Agreement.  King refused.

16   10.    At the January 25, 2006 Planning Commission meeting, which I

17   attended, King unveiled a new tentative map ("High Density Map") which, true to

18   John King's threat, provided a far greater density than the 140-Lot map King was

19   obligated to process.  The Planning Commission approved King's new tentative

20   map.

21   11.    On July 3, 2007, the City approved the High Density Map for the

22   Property.  Based on King's unilateral reconfiguration, the 27-acre element of the

23   approved tentative map contains approximately 180 lots.  Only 80 of these lots fall

24   within the definition of "Market Rate Lot" under the Purchase Agreement.

25   / / /

26   / / /

27   / / /

28   / / /

1    I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3    Executed this 26th day of June, 2012, in Las Vegas, Nevada.

4

5                                    /s/Reed Harris
                                  REED HARRIS
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### <u>DECLARATION OF THOMAS GREEN</u>

I, Thomas Green, declare, that if called as a witness, I would and could competently testify of my own personal knowledge as follows:

1.     I am an attorney at law authorized to practice in the State of California and in the United States District Court for the Central District of California.

2.     I am a member in the law firm of Adamski Moroski Madden Cumberland & Green LLP.

3.     I am the attorney primarily responsible for working with and for our client, Midland Pacific Building Corporation ("Midland Pacific"), in regard to litigation with John King.

4.     Midland Pacific filed a Complaint against King in the Superior Court in San Luis Obispo in February 2006 (just after King revealed the High Density Map).

5.     On March 23, 2006, Midland Pacific filed a First Amended Complaint to include additional causes of action.

6.     On April 27, 2006, King filed a Motion To Strike the First Amended Complaint pursuant to the anti-SLAPP statute (King claimed that Midland Pacific's actions to prevent him from processing any subdivision map he wanted was in violation of his constitutional rights).

7.     On May 30, 2006, Superior Court Judge Roger Picquet issued a ruling denying the Motion To Strike and King appealed.

8.     In affirming the trial court's decision, the Court Of Appeals held in a published opinion that Midland Pacific had established a *prima facia* case for breach of contract. *Midland Pacific Building Corp. v. King* 157 Cal.App.4th 264, 274 (2007).  But the Court Of Appeals also directed the Superior Court to expunge Midland Pacific's previously recorded *lis pendens* on the basis that the operative Complaint did not state a real property claim.

9.     After the First Amended Complaint was filed, King obtained approval from the City of San Luis Obispo for a the High Density Map as was required under

1  the terms of the parties' Purchase Agreement.  The City's approval triggered

2  Midland Pacific's obligation under the Purchase Agreement to purchase the

3  Margarita Property.  Accordingly, on April 14, 2008, Midland Pacific filed its Second

4  Amended Complaint to include causes of action for specific performance and

5  declaratory relief.  Midland Pacific also filed a Motion For Leave To Re-Record *Lis*

6  *Pendens*.

7        10.    On May 5, 2008, King demurred to the Second Amended Complaint on

8  the basis that the Purchase Agreement was allegedly in violation of the Subdivision

9  Map Act and that the fraud allegations were not properly pleaded.

10        11.    On May 27, 2008, the court overruled King's Demurrer and ordered

11  King to file an Answer within 30 days.  On June 25, 2008, King filed an Answer and

12  a Cross-Complaint against Midland Pacific.

13        12.    On August 28, 2008, the Superior Court denied Midland Pacific's

14  Motion To Re-Record The *Lis Pendens*, but by stipulated agreement of the parties,

15  the *lis pendens* remained of record.

16        13.    On August 29, 2008, Midland Pacific filed a Motion To Strike King's

17  Cross-Complaint pursuant to the anti-SLAPP statute on the basis that King's

18  Cross-Complaint alleged Midland Pacific breached the agreement by appearing at

19  public meetings and communicating with City employees.  Midland Pacific also filed

20  a Renewed Motion For Leave To Re-Record *Lis Pendens*, or in the alternative,

21  Motion To Reconsider the August 28, 2008 ruling.  On September 11, 2008,

22  Midland Pacific filed an Answer to King's Cross-Complaint.

23        14.    In September and then again in November 2008, the parties stipulated

24  to extend the hearing dates on Midland Pacific's Motion To Strike and Motion To

25  Re-Record *Lis Pendens*.

26        15.    On December 22, 2008, the case was reassigned, and at the request of

27  counsel, the Court continued the hearing dates on Midland Pacific's two Motions to

28  February 26, 2009.

21

16.    In January 2010, at the request of the parties, the court again extended the hearing on Midland Pacific's Motions to March 18, 2009, which was subsequently moved again to May 13, 2009.

17.    On May 6, 2010, the parties stipulated to informally resolve the issues presented by Midland Pacific's pending Motions in order to allow the parties to continue negotiating a possible settlement.    In the May 6 Stipulation, the parties agreed that:

- Midland Pacific would be permitted to file a Third Amended Complaint;
    - King would be permitted to file a pleading in response to the Third Amended Complaint and an amended Cross Complaint;
    - The *Lis pendens* that was ordered expunged but remained of record would continue to remain in place until defendant moved for expungement or by further agreement of the parties; and
    - That Midland Pacific's Motion To Strike and Motion To Re-Record would be taken off calendar.

18.    On June 4, 2009, Midland Pacific filed a Third Amended Complaint adding causes of action for rescission and to establish and foreclose a purchaser's lien pursuant to Civil Code section 3050.  On July 10, 2009, King filed an Answer to the Third Amended Complaint and a First Amended Cross-Complaint.    On August 13, 2009, Midland Pacific filed an Answer to the First Amended Cross Complaint.

19.    On January 14, 2010, the case was reassigned to Judge Dodie Harmon where it remains.

20.    On November 10, 2010, the parties attended private Mediation but were unable to resolve the matter, however the parties continued to work towards resolution.  On March 29, 2011, the parties filed a Stipulation To Extend The Time To Bring The Action To Trial because the numerous times the case was stayed during various Motions and Appeals made calculating the deadline unclear to both

1   parties.  The parties agreed that any trial on or before February 6, 2013 would be

2   timely.

3       21.   On August 12, 2011, Midland Pacific filed a Motion For Summary

4   Adjudication To Foreclose its Purchaser's lien, which Midland Pacific subsequently

5   withdrew to continue negotiations.  On December 7, 2011, the parties stipulated to

6   extend the trial date to some date prior to December 6, 2012.

7       22.   In regard to the current status of the pleadings, the operative pleading

8   for Midland Pacific is a Third Amended Complaint against King and Carole King

9   asserting causes of action for Breach Of Contract – Specific Performance,

10  Declaratory Relief, Breach Of Contract – Damages, Breach Of The Implied Covnant

11  Of Good Faith & Fair dealing, Fraud, Rescission And To Establish And Foreclose

12  Purchaser's Lien Pursuant to civil Code Section 3050.  A copy of the operative

13  Complaint and Answer (both without Exhibits) are attached as Exhibit "A."

14      23.   In his First Amended Cross-Complaint, King asserts causes of action

15  against Midland Pacific of Declaratory Relief, Breach Of Contract – Damages;

16  Breach Of The Implied Covenant Of Good Faith & Fair Dealing, Reformation Of

17  Contract And Rescission Of Contract.  A copy of the operative Cross-Complaint and

18  Answer (both without Exhibits) are attached as Exhibit "B."

19      24.   Midland Pacific seeks a to obtain a Judgment against King in Superior

20  Court, that will permit Midland Pacific to foreclose on Midland Pacific's Purchaser's

21  Lien and recover from King approximately Five Hundred Eighty-One Thousand

22  Dollars ($581,000) that Midland Pacific paid to King as deposit money towards the

23  purchase of the Property, in addition to interest thereon.  However, once Midland

24  Pacific obtains a Judgment against King, Midland Pacific agrees to forebear its right

25  to foreclose on the Property without first going back to the Bankruptcy Court to

26  either:  (1) have the Debtor agree to Midland Pacific's foreclosure and sale of the

27  Property; or (2) to be treated appropriately in Bankruptcy as a secured Judgment

28  Creditor with priority.

1    25.    The case is scheduled to go to trial on October 1, 2012.

2    26.    On June 13, 2012, -- after six years of litigation in the Superior Court -

3 - Intervenor Donna Cangelosi filed a Notice Of Removal To Bankruptcy Court, then

4 filed the pending Motion To Transfer.

5    I declare under penalty of perjury under the laws of the United States of

6 America that the foregoing is true and correct.

7    Executed this 27th day of June, 2012, in San Luis Obispo, California.

8

9                              /s/Thomas Green
10                              THOMAS GREEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
300 S. Grand Avenue, Suite 1400, Los Angeles, California  90071

A true and correct copy of the foregoing document entitled (*specify*):  **_Request for Hearing and Response of Midland Pacific_**
**_Building Corporation to Intervenor Donna Cangelosi's Notice of Motion and Motion to Transfer Proceeding to the District Court_**
**_of Nevada; Declarations of Dennis Moresco, Reed Harris and Thomas Green_**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
June 28, 2012_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee          ustp.region16@usdoj.gov
Scott T. Pratt                  scott.pratt@kyl.com (Attorney for Defendants)
David D. Piper                  david.piper@kyl.com (Attorney for Defendants)
Frederick K. Glick             fred@glickhaupt.com (Attorney for Plaintiff)
Jeffrey A. Minnery             minnery@ammcglaw.com (Attorney for Plaintiff)
John A. Moe, II                jmoe@mckennalong.com (Attorneys for Plaintiffs)

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) June 28, 2012_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Thomas D. Green
ADAMSKI MORSKI MADDEN
CUBERLAND & GREEN LLP
P. O. Box 3835
San Luis Obispo, CA  93403-3835

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 28, 2012_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**                        **VIA OVERNIGHT MAIL**
Honorable Robin L. Ribet                       William McGrane
United States Bankruptcy Court                 William Walraven
Central District of California -Northern Division    McGRANE LLP
1415 State Street, Courtroom 201               4 Embarcadero Center, Suite 1400
Santa Barbara, CA  93101-2511                  San Francisco, CA  9411

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 28, 2012 | Glenda Spratt | /s/Glenda Spratt |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

iThis form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.